## EDDOWES *et al. v.* THOMAS NIELL.

### *Letter of credit.—Presumption of payment.*

In order to render a letter of credit obligatory, it is not necessary, that it should be answered.[1]

A lapse of nineteen years, without notice of a default in payment, by the principal, is not, considering the circumstances of this case, such gross negligence, as to discharge the surety, and from the nature of this contract, such a lapse of time will not warrant a presumption of payment.[2]

THIS was an action on the case, for goods sold and delivered to William Niell, upon a special *assumpsit* by the defendant, Thomas Niell, to guaranty the payment of the price : pleas, 1st, *non assumpsit*, on which issue was joined ; and 2d, the statute of limitations, to which, resident beyond seas, was replied, &c.

The plaintiffs were British merchants, from whom William Niell, a trader in Baltimore, was accustomed to import goods. On the 14th of January 1771, his brother, the defendant, wrote a letter to them, in which he said, " that to strengthen *his* brother's credit, he would guaranty all his dealings with their *house.* " Several shipments of goods were made, both before and after the receipt of this letter ; and William Niell continued to make payments on account, until the year 1775, when the revolutionary war began its agitations ; and all commercial and amicable intercourse, between Great Britain and the United States was suspended, until the peace of 1783. In the year 1784, the plaintiffs sent a power of attorney to collect the debts due to them here ; their agent applied to William Niell, who acknowledged the justice of the debt ; but claimed an abatement of eight years' interest, on account of the war ; and a further credit upon giving his bond for the amount ; which the agent refused. In 1785, William Niell died, leaving the defendant his executor ; to whom, in that character, the agent of the plaintiffs applied for payment ; and he answered, by admitting the claim, and recommending a suit against the estate. No demand, however, was made, on the ground of the defendant's guarantee, until about the time of commencing the present action, in January 1790.

*\*134]*    \*On these general facts, the *plaintiff's* counsel contended : 1st. That the demand was fair and legal, founded upon an unequivocal letter of credit, applicable, in its terms and meaning, as well to shipments made before, as after, it was received.    2d. That it was not necessary, to render the letter binding on the defendant, that the plaintiffs should answer it ; nor that they should give notice to him of a default (as in the case of bills of exchange), at any period of the transaction.    3d. That there was no express waiver of · the guarantee ; and nothing can be implied, even in favor of a

---

[1] s. P. Smith *v.* Dann, 6 Hill 543; Union Bank *v.* Coster, 3 N. Y. 203. But in Kay *v.* Allen, 9 Penn. St. 320, it was decided, that a letter of credit does not create a liability on the part of the writer, unless he has notice of acceptance, or the guarantee and credit given were contemporaneous. See also, to the same point, Kellogg *v.* Stockton, 29 Penn. St. 460; Bay *v.* Thompson, 1 Pears. 551; Douglass *v.*

Reynolds, 7 Pet. 113; s. c. 12 Id. 497; Lee *v.* Dick, 10 Id. 482; Adams *v.* Jones, 12 Id. 207; Wildes *v.* Savage, 1 Story 22.

[2] A continuing guarantor is not discharged, by the mere neglect of the creditor to enforce payment, in the absence of connivance, or of negligence so gross as to amount to fraud. McKechnie *v.* Ward, 58 N. Y. 541.

Eddowes v. Niell.

surety, since no new security was taken ; nor **any** negligence shown, in omitting to prosecute the principal, upon the demand of the surety.

For the *defendant*, it was urged: 1st. That the demand was a harsh and stale one ; founded on a letter, which had not, in fact, created any additional confidence or credit ; the receipt of which had never been acknowledged ; and the responsibility of which had never been suggested, for more than nineteen years.   2d. That the guarantee ought not to receive an indefinite interpretation ; but to be regarded as a credit, according to the course of the American trade, for a year ; and to forbear a suit for so long a time, during the life, and after the death of the principal, was, in fact, giving a new and independent credit ; which is tantamount to a release of the surety.   3d. That although the statute of limitations may not apply, as a plea in bar (the plaintiffs residing abroad), the lapse of time furnishes a presumption, that the defendant's letter never was accepted or relied upon, as a guarantee. 4th. That, on the most rigid construction, the guarantee can only apply to future, not to past transactions.   And on these points, respectively, the following books were cited: 1 T. R. 167 ; 2 Bro. Ch. 579 ; 2 T. R. 366, 370 ; 1 Pow. Cont. 287 ; Ibid. 8, 9, 10.

By THE COURT.—Letters of credit are a common and useful instrument in the course of commerce.   They are, however, of a very serious nature ; and the writer is bound to comply with the contents, according to their genuine and honest import.   In order to render them obligatory as a contract, it is not necessary, that they should be answered, if credit is given upon them.   Like the case of transmitting a bond, in a letter, acquiescence and acceptance are implied, in the silent receipt of the instrument.

It has been urged that the lapse of nineteen years, without notice of a default in payment by the principal, is a virtual abandonment of all recourse to the surety; on the principles applicable to bills of exchange, and to other negotiable instruments.   But there is no analogy between the cases ; for the engagement of the letter of credit extends, in its very nature, to various future transactions, without reference to time or amount.   It is true, however, that the gross negligence of a creditor, even of the *obligee   [*135 in a bond, may operate to discharge a surety; as where the obligee is requested by the surety to proceed against the principal, in order to save the debt ; if he neglects or refuses to do so, the surety, both in law and equity, will be exonerated ; and this is the case in 2 Brown's Chancery Reports, 579.   But does the evidence in the present action, justify an adoption of the rule ?   From the years 1771 and 1772, when the shipments were made, until the year 1775, when payments were first suspended, there could be no reason for calling on the defendant.   From 1775, until the peace of 1783, the debtor was guilty of no default, which would warrant an application to the surety; for he was prevented, by the war, from corresponding with the creditor, and making any payment or remittance on account of the debt. As soon as the peace had restored the intercourse between the parties, the creditor applied for payment to the debtor, who acknowledged the debt ; claimed an abatement of interest ; and made some overtures for a settlement ; but died in the next year, without effecting anything in that respect. The agent of the plaintiffs then addressed the **defendant**, *not as* surety, but

Schenckhouse v. Gibbs.

as executor of his brother : and, indeed, it does not appear, that the agent knew of the letter of credit, until sometime afterwards.

On this review of the facts, we cannot perceive any culpable negligence, on the part of the plaintiffs, in pursuing their original debtor : nor is it clear, that they had any right to call upon the defendant, as a surety, until they had failed in their endeavors to recover from the principal ; or the principal had become notoriously insolvent. The want of notice, therefore, in such a case, and under such circumstances, does not, in itself, furnish a bar to the demand ; and although, in some instances of debts, a lapse of time will warrant a presumption of payment ; yet, from the nature of this contract, no such presumption can arise here.

Verdict for the plaintiffs. (<i>a</i>)

*Tilghman* and *Bowie*, for the plaintiffs. *Ingersoll*, *Smith* and *Duncan*, for the defendant.

---

(*a*) This cause was tried at York Town *nisi prius,* on the 22d of May 1793, before SHIPPEN and BRADFORD, Justices.

